UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SEAN HEDIN, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 04-CV-0406-CVE |
| ) | |
| CINGULAR WIRELESS, LLC, a ) | |
| Foreign Corporation, and CINGULAR ) | |
| WIRELESS HEALTH AND WELFARE ) | |
| BENEFITS PLAN FOR ) | |
| NONBARGAINED EMPLOYEES ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Plaintiff filed this action to recover benefits and to enforce his rights under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq. ("ERISA"). Plaintiff challenges the decision by Cingular Wireless, LLC ("Cingular") to deny his claim for short term disability ("STD") benefits under his employer's group disability plan, Cingular Wireless Health and Welfare Benefits Plan for Nonbargained Employees ("the Plan").

### I.

Cingular employed plaintiff as a customer service manager from Spring 2001 to September 18, 2003. As a full-time employee of Cingular, plaintiff automatically became a participant in the Plan. According to plaintiff, his job required prolonged standing while answering questions from customer service representatives. Defendants dispute that customer service managers need to be on their feet for long periods of time. In Fall 2002, plaintiff began experiencing subjective symptoms of fatigue, weakness, palpitations, headaches, dizziness, decreased concentration, numbness, panic attacks, and insomnia. On September 23, 2002, plaintiff filed his first STD claim, which was denied, and, on November 26, he filed a second STD claim, which was denied. Id. at 184, 196. Plaintiff

subsequently filed a third STD claim which was approved, thereby giving plaintiff STD benefits starting on December 10, 2002. Id. at 198.

At all times relevant to this appeal, Metropolitan Life ("MetLife") was the claims administer of the Plan.[1]  Administrative Record ("Adm. Rec.") at AR0066 (subsequent references omit the Bates-stamp prefix). The Plan afforded discretion to MetLife, as the plan administrator, to decide whether an employee had supplied MetLife with "credible objective" medical support for his or her claim. Id. at 25. Under the Plan, STD benefits were funded by Cingular, and long term disability ("LTD") benefits were insured through MetLife. Id. at 77.

Plaintiff alleges that this case involves a wrongful termination of his LTD benefits. However, the record does not support plaintiff's reading of the Plan or his claim history. MetLife has reviewed plaintiff's claims for STD benefits only. To be qualified for LTD benefits, plaintiff would have had to apply for Social Security disability benefits and show that his disability continuously prevents him from engaging in "any employment for which [he is] qualified or may reasonably become qualified for based on education, training or experience." Id. at 55, 58. Plaintiff fails to present evidence that he filed an LTD claim with MetLife or that he applied for Social Security benefits, a prerequisite for LTD qualification. Plaintiff was never denied nor awarded LTD benefits under the Plan and, accordingly, this case is limited to MetLife's review of plaintiff's STD benefits.

As a recipient of STD benefits, plaintiff had a duty to submit supplemental medical information to document continued "total disability." Id. at 64. The Plan defines "total disability" for STD purposes as:

---

[1] Subsequent to MetLife's final denial of plaintiff's claim for STD benefits, Cingular replaced MetLife with Broadspire as claims administrator. Dkt. # 39, Ex. A, at 2.

>due to illness or injury you are unable to perform your customary job or another available job assigned by your Company with the same full- or part-time classification for which you are reasonably qualified.

Adm. Rec. at 54. On January 20, 2003, plaintiff's doctor, J. Frederick McNeer, M.D., submitted an attending physician statement, wherein he diagnosed plaintiff with thyroiditis and partial obstruction from renal stones. Id. at 227. Dr. McNeer also identified plaintiff as a suitable candidate for vocational rehabilitation. Id. When MetLife requested updated medical information by January 31, 2003, Dr. McNeer's office re-sent the earlier attending physician statement on February 3. Id. at 229, 298. MetLife continued to request additional documentation of disability throughout plaintiff's coverage. See id. at 324. On May 23, 2003, MetLife advised plaintiff that it had not received requested medical information from Dr. McNeer. Adm. Rec. at 215.

MetLife determined that plaintiff no longer met the definition of "totally disabled" under the Plan and terminated plaintiff's STD benefits effective May 22, 2003. Id. at 328. The Plan establishes a maximum duration of twenty-six weeks for STD benefits. Id. at 53. Given that plaintiff received over twenty-three weeks of STD benefits, it follows that plaintiff seeks to recover approximately two and a half weeks of STD benefits ($991.43). Between December 2002 and May 2003, MetLife allegedly overpaid plaintiff $1,499.88. Dkt. # 48, Ex. B, at 2.

In July 2003, plaintiff appealed the initial termination of his STD benefits. In support of plaintiff's administrative appeal, Dr. McNeer completed another attending physician statement, dated June 3, 2003, which identified plaintiff as suffering from acute thyroiditis and peripheral neuropathy. Adm. Rec. at 291. Dr. McNeer noted that plaintiff was unable to work but might consider returning to work in August 2003. Id. at 292. While Dr. McNeer identified plaintiff having severely limited psychological functioning, he also stated that these limitations did not affect plaintiff's ability to perform the duties of his job. Id. Updated laboratory tests indicated that

3

plaintiff's results were "great!" or "OK." Id. at 281-84. Plaintiff acknowledges that Dr. McNeer described plaintiff's rare ailment as one that would "run its course" in about a year. Adm. Rec. at 288.

Upon administrative appeal, MetLife had plaintiff's claim file reviewed by an independent physician consultant, Gary P. Greenhood, M.D., who is board certified in internal medicine and infectious disease. Id. at 333-34. Dr. Greenhood noted that plaintiff's periodic limb movement disorder was mild and would not be expected to preclude work, that the probable left-sided urethral stone had likely spontaneously passed by January 2003, and that, if plaintiff was hyperthyroid, there was no evidence that his impairment was due to this condition. Id. Dr. Greenwood concluded that plaintiff's condition did not preclude work. Adm. Rec. at 333-34. On August 1, 2003, MetLife upheld its initial determination and denied plaintiff future STD benefits. Id. at 337.

## II.

On May 13, 2004, plaintiff filed suit, alleging defendants violated 29 U.S.C. § 1132 in terminating his benefits. As a plan beneficiary, plaintiff has the right to federal court review of benefit denials under ERISA. Specifically, section 1132(a)(1)(B) grants plaintiff the right to bring a civil action to recover benefits or to enforce his rights under the terms of the Plan. A denial of benefits challenged under section 1132(a)(1)(B) is to be reviewed under an arbitrary and capricious standard when a plan gives the administrator or other fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of a plan. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Nance v. Sun Life Assurance Co. of Canada, 294 F.3d 1263, 1267-68 (10th Cir. 2002). It is undisputed that the Plan gives MetLife such discretionary authority.

Indicia of arbitrary and capricious actions include lack of substantial evidence, mistake of law, bad faith, or conflict of interest by the fiduciary. Caldwell v. Life Ins. Co. of North America,

287 F.3d 1276, 1283 (10th Cir. 2002) (citing Sandoval v. Aetna Life and Cas. Ins. Co., 967 F.2d 377, 380 n.4 (10th Cir. 1992)). Under the two-tier "sliding scale" approach adopted by the Tenth Circuit, an "additional reduction in deference is appropriate" where there is an inherent or proven conflict of interest. Fought v. Unum Life Ins. Co. of America, 379 F.3d 997, 1006 (10th Cir. 2004). It is plaintiff's burden to show such a conflict exists. Id. at 1005. If such a conflict is shown, "the plan administrator bears the burden of proving the reasonableness of its decision pursuant to [the Tenth Circuit's] traditional arbitrary and capricious standard." Id. However, MetLife did not operate under an inherent conflict of interest in their review of plaintiff's STD benefits where such benefits were paid by Cingular. Further, plaintiff has failed to present persuasive evidence of a proven conflict of interest.[2] Therefore, conflict of interest is simply weighed as one factor in determining whether there was an abuse of discretion. Id. at 1005.

The issue, then, is whether defendants acted arbitrarily and capriciously when they made the final decision to terminate plaintiff's STD benefits. The Court considers the record as a whole. Caldwell, 287 F.3d at 1282. An administrator's decision "need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [the administrator's] knowledge to counter a claim that it was arbitrary and capricious." Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1460 (10th Cir. 1991). The Court must also "take into account whatever in the record fairly detracts from the weight of the evidence in support of the administrator's decision." Washington

---

[2] Plaintiff argues that MetLife had a conflict of interest because its August 1, 2003 termination prevented his STD benefits from bridging over into LTD benefits, in which case MetLife would operate under an inherent conflict of interest as both the administrator and payor. However, plaintiff fails to present evidence that he applied for or was qualified for LTD benefits. Plaintiff failed to exhaust his administrative remedies for LTD benefits and, therefore, this Court has no jurisdiction to review plaintiff's potential claim for LTD benefits. See Peterson v. Continental Casualty Co., 282 F.3d 112, 117 (2nd Cir. 2002) (district court did not have jurisdiction to adjudicate whether plaintiff was eligible for LTD benefits as claim administrator had denied only plaintiff's claim for STD and occupation-period benefits).

5

v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994). The Court gives less deference to an administrator's conclusions if the administrator fails to gather or examine relevant evidence. See Caldwell, 287 F.3d at 1282. Yet, the Court "will not set aside a [] decision if it was based on a reasonable interpretation of the plan's terms and was made in good faith." Trujillo v. Cyprus Amax Minerals Co. Ret. Plan Comm., 203 F.3d 733, 736 (10th Cir. 2000).

### III.

Plaintiff argues that defendants' decision to terminate his benefits was arbitrary and capricious. In support of his allegation, plaintiff merely recites a series of medical tests that he underwent but fails to offer evidence that the tests found him to be "totally disabled" as defined by the Plan. To the contrary, the medical records reveal that the majority of tests shows plaintiff functioning at normal levels. Plaintiff argues that his doctor's opinions should be given more weight than the conclusions of Dr. Greenhood. However, ERISA does not require plan administrators to accord special deference to opinions of treating physicians. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832 (2003) ("if a consultant engaged by a plan may have an incentive to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'").

### IV.

In summary, defendants' decision to terminate plaintiff's STD benefits was an exercise of discretion granted by the Plan. Viewing the record as a whole, defendants relied upon substantial evidence, including a report by a board certified doctor, who, although he never examined plaintiff, was familiar with the conditions affecting plaintiff's ability to work. The Court finds that defendants' decision to terminate plaintiff's STD benefits was not arbitrary and capricious. Thus, affirmance of defendants' decision is appropriate.

**IT IS THEREFORE ORDERED** that defendants' August 1, 2003 final decision to terminate plaintiff's STD benefits is hereby **AFFIRMED**. A separate judgment is filed herewith.

**DATED** this 13th day of February, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT